In re **JEWELCOR, INCORPORATED, Jewelcor Jewelers and Distributors, Inc., Gruen Marketing Corp., Osaka Trading Company, Gruen Precision, Inc., Showroom Reality Co., Inc., Catalog Reality, Inc., S.H. Holdings, Inc., JC Acquisition Corp., Just Watches, Ltd., Robert J. Tabakow, Inc., Guildcraft Precision, Ltd., Panther Manufacturing, Ltd., Lt, Inc. and JJ & D Realty Co., Inc., Debtors–in–Possession.**

Bankruptcy Nos. 1–91–00140 to 1–91–00154.

United States Bankruptcy Court, M.D. Pennsylvania.

March 10, 1994.

Alex J. Nobile, Exeter, PA, Steven P. Roth, Wilkes–Barre, PA, Edward A.C. Sutherland, New York City, for debtor Jewelcor, Inc.

Robert Nowalis, Wilkes–Barre, PA, for party-in-interest M & G Equities Corporate Printing, Inc.

Edgar H. Booth, New York City, for party-in-interest Unsecured Creditors' Committee.

Alan J. Sorkowitz, New York City, for party-in-interest Asia Commercial, Ltd.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The Court has for its consideration Debtor's Motion for Recusal, filed June 2, 1993, pursuant to Title 28 U.S.C. § 455 for disqualification of a Federal Judge from acting in a particular case on the grounds that the Debtor believes this Court "... has formed an opinion about its motivations, litigation tactics and management, which has resulted in prejudice and bias making it difficult for the Court to fairly adjudicate the legal and factual issues." *Debtor's Motion, paragraph 5.*

In support of its Motion, the Debtor advances four (4) examples suggesting that the Court has exhibited the bias of which it complains:

A) With regard to Jewelcor vs. M & G Equities, Adversary No. 5–92–0031, this Court granted M & G's Motion to Dismiss at a Pre–Trial Conference.

B) In related matters concerning Asia Commercial Corporation, Ltd. {*In re Jewelcor, Inc.*, 150 B.R. 576 (Bkrtcy.M.D.Pa. 1992); *Gruen Marketing Corp. v. Asia Commercial Co. (In re Jewelcor, Inc.*, 150 B.R. 580 (Bkrtcy.M.D.Pa.1992))}, the Court denied the Debtor's Motion to Reconsider an Order issued by U.S. Bankruptcy Judge, Robert Woodside, relative to the payment of claims under the Chapter 11 Plan and further denied the Debtor the opportunity to litigate a trademark infringement case in Bankruptcy Court.

C) In the pending Motion of The Corporate Printing Company, Inc. for an Order Compelling Debtors to Pay Administrative Claim and Implement Plan, the Bankruptcy Court, after the Debtor had rested, granted Corporate Printing a continuance based on surprise and further granted Corporate Printing's Motion for Additional Discovery.

D) In various adversarial matters, the Debtor alleges that this Court has allowed Attorney Robert Nowalis, counsel for various creditors, through innuendo in pleadings, to make derogatory and slanderous comments without admonishment.

Notice of this Motion was circulated to the Creditors' Committee counsel and to all par-

ties involved with litigation then pending before the Court.

The hearing on same was conducted on July 7, 1993, at which time the Debtor, not through counsel of record but through its own "in house" counsel, presented its case by filing an Affidavit in Support of the Motion and allowing its counsel to be cross-examined by the objectors present in Court.

Objecting to the Motion for Recusal were the following: the Creditors' Committee of Jewelcor, Inc.; Asia Commercial, Ltd.; and M & G Equities, Corporate Printing, Inc., Doyle and Doyle, Inc., Maria Sirgany and Henry Farash, collectively.

### APPLICABLE LAW

The Debtor relies on 28 U.S.C.A. § 455(a) and § 455(b)(1) which reads as follows:

**§ 455. Disqualification of justice, judge, or magistrate**

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

The first issue raised by the parties is whether under Section 455(a) the cause by which a judge's impartiality is questioned must stem from an extrajudicial source in order for a judge to be disqualified. The objectors suggest that this bias must arise from an extrajudicial source. On the other hand, the Debtor suggests that the bias that would subject a judge to disqualification under this subsection need not arise from such extrajudicial basis.

"Extrajudicial bias refers to a bias that is not derived from the evidence or conduct of the parties that the judge observes in the course of the proceeding." *Johnson v. Trueblood,* 629 F.2d 287 (3rd Cir.1980).

In *Johnson v. Trueblood,* the Third Circuit apparently concluded that the type of bias required for recusal must be of an extrajudicial nature. *Id.* at p. 290. An extrajudicial bias may be contrasted to the judge's rulings at trial and other related rulings inasmuch as the rulings during the course of litigation between the parties can be corrected by reversal on appeal. *Id.* at p. 291.

Although it is well established among most of the Circuits that have considered this question that only extrajudicial bias can form the basis for a Motion for Recusal under 28 U.S.C. § 455(a), the Supreme Court of the United States has recognized that there is a split among the Courts wherein the First Circuit would consider appearances of judicial bias and prejudice originating in judicial proceedings and the Fourth, Fifth, Sixth and Eleventh Circuits would require a showing that the bias be extrajudicial. *Waller v. United States,* —— U.S. ——, 112 S.Ct. 2321, 119 L.Ed.2d 239 (1992). Resolution of this split is now pending before the Supreme Court. *Liteky v. United States,* —— U.S. ——, 113 S.Ct. 3032, 125 L.Ed.2d 720 (1993).

Although we have heretofore cited the case of *Johnson v. Trueblood* as authority for the proposition that the Third Circuit requires a showing that this bias be extrajudicial, the continued vitality of the Third Circuit's opinion can be questioned based on their recent decision in *Haines v. Liggett Group, Inc.* wherein a District Court judge was removed by reason of the District Court's observation in a pre-trial opinion that "The tobacco industry may be the king of concealment and disinformation", this statement coming in a wrongful death action brought by the Plaintiff against the tobacco industry. *Haines v. Liggett Group, Inc.,* 975 F.2d 81 (3rd Cir. 1992).

Although the Circuit did not address the specific statute in question (28 U.S.C. § 455), it was quite clear that the Court based its decision on the need to avoid "even the appearance of bias".

Similarly, the Third Circuit again recused a sitting Judge for statements made during litigation inasmuch as his impartiality "might reasonably be questioned". *Judd Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155 (3rd Cir.1993).

■ It is for these reasons that this Court will conclude that the bias necessary to disqualify a judge under 28 U.S.C. § 455(a) need not be extrajudicial but can be based on gratuitous comments and like matters of sufficient impropriety.

Since the Debtor further maintains that the Court should disqualify itself under 28 U.S.C. § 455(b)(1) inasmuch as it exhibited a personal bias as evidenced by the same allegations they make in support of disqualification under Section 455(a), we will consider these two grounds jointly in discussing those reasons advanced by the Debtor for disqualification.

### DISCUSSION

It has been said that a lawyer who represents himself, has a fool for a client. If that is true, how competent is a judicial officer who attempts to judge himself? Unfortunately, that is what the Court is statutorily mandated to do in considering a Motion to Recuse itself under 28 U.S.C. § 455 since a judge "... shall disqualify himself ..." when circumstances so indicate.

On the other hand, this Court is fortunate to be able to draw on the guidance of the Third Circuit Court of Appeals in three (3) cases that have found their way to that tribunal.[1] It is by reason of these cases that a measure of objectivity can be utilized in analyzing a very subjective issue. That issue, of course, is whether this Court, under 28 U.S.C. § 455(a) or (b)(1) should disqualify itself.

The Debtor's Motion relies exclusively on certain of this Court's rulings and its failure to rule by sua sponte admonishing counsel for various creditors to demonstrate a "personal bias" which either exists (and thus disqualifies the Court under § 455(b)(1)) or may be perceived by the general public to exist (and thus disqualifies the Court under § 455(a)).

In *Judd Alexander v. Primerica Holdings, Inc., supra,* the Circuit disqualified District Judge Alfred J. Lechner, Jr. by reason of various comments made over a series of pro-

ceedings in a pending litigation. Those comments were viewed by the Circuit in such a way that this Court could deduce the following factors which were considered in the rendering of that decision: (1) the Court's unjustified reliance on a reversed issue; (2) judicial accusations of possible perjury; (3) judicial accusations of bad faith and abuse of process; (4) exhibition of a personal interest in the outcome of the litigation; (5) the assumption of an adversarial position; and (6) the Court's alignment with a party to the litigation.

An additional factor can be added by reference to *In re School Asbestos Litigation,* 977 F.2d 764 (3rd Cir.1992) where extra-judicial activity, in the form of attendance at a Plaintiff-oriented seminar on asbestos, disqualified the Court from further administration of an asbestos-related litigation.

We also know from *Haines v. Liggett Group, Inc., supra,* that perjorative comments directed at an industry can disqualify a Judge from administering a litigation involving an entity which is part of that industry.

An analysis of the facts in the case at bar results in this Court concluding that the only factor identified by the Circuit even remotely suggested by the Debtors as present in this case is one of "judicial alignment" with a party to the litigation alleged to have occurred by this Court not commenting on Attorney Nowalis' alleged objectionable comments in his pleadings.

All of the other criticisms raised by the Debtor in its Motion and presentation utilized direct rulings of the Court as evidence of bias.

■ "Court rulings do not prove that a Judge is biased or prejudiced." *United States v. Gallagher,* 576 F.2d 1028, 1029 (3rd Cir.1978). This concept that adverse rulings should not serve as a reason for recusal is founded on the "practical purpose of preventing parties from using the claim of partiality as a pretext for judge-shopping or challenging adverse rulings of law or fact which should properly be addressed only through

---

1. *Judd Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155 (3rd Cir.1993). *In re School Asbestos Litigation,* 977 F.2d 764 (3rd Cir.1992). *Haines v. Liggett Group, Inc.,* 975 F.2d 81 (3rd Cir.1992).

the appellate process." *United States v. Conforte*, 457 F.Supp. 641, 657 (D.C.Nev. 1978) *affm'd in pertinent part*, 624 F.2d 869 (9th Cir.1980) *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

"The bias or prejudice which can be urged against a judge must be based upon something other than rulings in the case." *Berger v. United States*, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921).

If judicial rulings alone could form the basis for disqualification, the Court would be required to maintain a judicial scorecard where rulings would alternatively favor plaintiff and defendant/movant and respondent. See, for example, the decision in *In re International Business Machines Corp.*, 618 F.2d 923 (2d Cir.1980). A trial is not a sporting event—objections are not judicial "jump balls" and decisions cannot simply be made by reviewing the present status of the possession arrow. A judicial officer, sometimes instantaneously, must reflect on the facts, consider the law, and issue a ruling considered fair and appropriate by he or she. If that ruling is in error, then the Court's ruling can be corrected by a higher tribunal; as in fact happened in *Jewelcor, Inc. vs. M & G Equities*, Adversary No. 5-92-0031; *rev'd Jewelcor, Inc. vs. Marketing of Jewel Services Corp. vs. M & G Equities*, No. 3:CV-93-220, Slip. Op. (M.D.Pa. April 8, 1993 as amended by Order April 9, 1993). This Court has no personal feelings regarding that reversal except an appreciation that it has been given a second opportunity to correct an error. Moreover, "... it is not contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around." *Withrow v. Larkin*, 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975).

The Debtor has suggested that the following quote that this Court used in *Gruen Marketing Corp. v. Asia Commercial Company, Ltd.*, 150 B.R. 580 (Bankr.M.D.Pa. 1992) has some sinister and improper implications:

> However, as in the *Greenley* case, this Court is of the opinion that the time has come to separate the cord that binds this reorganized successor-in-interest, the above-captioned Plaintiff, from the Bankruptcy Court jurisdiction. *Id.* at pg. 583.

The *Asia Commercial* holding concluded that this Court had no jurisdiction to litigate a trademark infringement case by the Debtor and against the claimant, Asia Commercial Company as a counterclaim to claims litigation already rendered final by what this Court held to be a final Order by Chief Bankruptcy Judge Robert Woodside in the Harrisburg Division of the Middle District of Pennsylvania.

The point of law used in *In re Greenley Energy Holdings of Pennsylvania, Inc.*, 110 B.R. 173 (Bankr.E.D.Pa.1990) that we thought was applicable to the case before us at the time was that a bankruptcy court's post-confirmation jurisdiction is limited to matters concerning operation of a confirmed Chapter Eleven Plan. To give emphasis to that holding, we utilized the metaphor of separation of "the cord" in Asia Commercial Ltd.

It is inconceivable that this Court's stated desire to limit post-confirmation jurisdiction to matters concerning a confirmed Chapter Eleven Plan is somehow a bellwether for adverse trial rulings in M & G Equities and in Corporate Printing, Inc. Litigation of pending claims is a necessary ingredient to the final closure of a case.

█ As suggested earlier, the only allegation that appears capable of categorization as a factor in earlier Third Circuit rulings is the suggestion that I have aligned myself with a party to the litigation.

In support of the allegation that the Court has failed to admonish Attorney Nowalis for scandalous pleadings, comments on the record, etc., Debtor's in-house counsel, Attorney Nobile, cited the following sentence on page 5 of the Reply Brief of M & G Equities on Debtor's Motion to Assume the Lease, M & G's Motion to Compel Rejection of Lease and M & G's Motion to Compel Payment of Administrative Rent Claim: "Quite simply, the position of the Debtor is absurd, the Debtor's argument is a testimony to the arrogance of

**46**

the Debtors". *Transcript* dated July 7, 1993 at page 21.

Attorney Nobile cited the following additional quotes from that same Brief, "The Debtors stonewalled M & G, as they are in the habit of doing with many of their creditors, even those with whom they have settled." *Transcript* dated July 7, 1993 at page 23.

Attorney Nobile further testified as to the following quotes that could be found in the Post–Trial Brief of M & G Equities:

"The Debtors are known to be litigious."

"The Debtors are quick to appeal Trial Court decisions, but loath [sic] to post bonds to secure stays pending appeal."

"There is the clear danger that the Debtors will follow their emerging custom of abusive appeals without stay or bond."

Attorney Nobile also cited the "Motion of Doyle and Doyle, Inc. for Order Compelling Debtors to Pay Claim" in paragraph 21 thereof which read, "Doyle and Doyle believes and, therefore avers, that the contempt of the Debtors is not innocent, but is intentional and mean spirited." *Transcript* dated July 7, 1993 at page 23.

Attorney Nobile characterized this language as "scandalous, ... slanderous and liable" [sic]. *Transcript* dated July 7, 1993 at page 23.

When Attorney Nobile was asked to recall one instance when the Court was asked to admonish or reprove Mr. Nowalis for making these statements, Attorney Nobile replied, "I can't recall an instance where I personally have done it." *Transcript* dated July 7, 1993 at page 24. Attorney Nobile repeated that statement on page 35 of the Transcript.

Federal Rule of Civil Procedure 12(f), made applicable to bankruptcy by Federal Rule of Bankruptcy Procedure 7012, authorizes the Court, on its own initiative, to order stricken from any pleading any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter".

Scandal in general consists of any allegation which unnecessarily reflects upon the moral character of an individual, or states anything in repulsive language which de-

tracts from the dignity of the court. The term "scandal" is not as broad as "impertinence," and courts will usually strike so-called scandalous material only if it is irrelevant and immaterial to the issues in controversy. 2A *Moores Federal Practice*, ¶ 12.21 at page 12–203.

Even if we were to include briefs as a pleading under Rule 12(f), this Court cannot conclude that terms such as "absurd", "litigious", "abusive", or "mean spirited" are conclusively irrelevant and immaterial to the issues currently pending before this Court. Moreover, although these terms are not complimentary, neither are they repulsive and therefore, we find no merit in the Debtor's assertion that this Court should have, sua sponte, admonished Attorney Nowalis.

Even should we admit that some admonishment of Attorney Nowalis was warranted, that would merely reflect this Court's after-the-fact reconsideration of pending matters and not represent any evidence of an inherent bias or prejudice by this Court.

In summary, we have examined each identifiable allegation of the Debtor's as to the suggestion that this Court is biased or prejudiced against the Debtor or even appeared to be biased or prejudiced against the Debtor and we have concluded that the Debtor's allegations are without merit.

Accordingly, we issue the attached Order.

### ORDER

Upon consideration of the Motion of the Debtor and after a hearing thereon, **IT IS HEREBY**

**ORDERED AND DECREED** that the Motion of the Debtor to Recuse this Court is denied for those reasons set forth in the attached Opinion.